UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| OXBOW CARBON & MINERALS LLC, *et al.* | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 11-cv-1049 (PLF/GMH) |
| UNION PACIFIC RAILROAD COMPANY, *et al.* | ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

This matter was referred to the undersigned for the resolution of all discovery disputes. Presently ripe for resolution is Defendants' motion to compel, [Dkts. 105, 108], requesting that the Court order Plaintiffs to produce all documents belonging to their CEO, the production of which Plaintiffs, in turn, argue would be unduly burdensome and disproportionate to any value the documents might possess to Defendants in this litigation. Following two hearings on this matter, and upon consideration of the parties' filings and the entire record herein,[1] the Court finds that Defendants' motion to compel should be granted.

## BACKGROUND

Plaintiffs are five related companies (collectively, "Oxbow") that mine and sell coal and petroleum coke ("petcoke"). *See* Am. Compl. at ¶¶ 9–13. They allege in the Amended Complaint

---

[1] The relevant docket entries for purposes of this Memorandum Opinion are: (1) Plaintiffs' First Amended Complaint ("Am. Compl.") [Dkt. 53]; (2) Defendants' Redacted Motion to Compel ("Mot.") [Dkt. 108]; (3) Plaintiffs' Redacted Response to Defendants' Motion to Compel ("Resp.") [Dkt. 110]; (4) Defendants' Redacted Reply in Support of Defendants' Motion to Compel ("Reply") [Dkt. 113]; (5) Transcript of Proceedings held on June 14, 2017 ("6/14/17 TR.") [Dkt. 120]; (6) the Joint Status Report ("Report") [Dkt. 121]; (7) Plaintiffs' Supplement Letter Brief ("Pl. Supp. Letter Brief") [Dkt. 123]; (8) Defendants' Redacted Supplemental Letter Brief ("Def. Supp. Letter Brief") [Dkt. 124]; and (9) Transcript of Proceedings held on August 24, 2017 (8/24/17 TR.") [Dkt. 125]. The Court will cite herein to the CM/ECF page numbers assigned to the documents cited.

that Union Pacific ("UP") and BNSF Railway Company ("BNSF")—both railroad companies with which Oxbow contracts to ship coal and petcoke—conspired to engage in anticompetitive conduct from 2004 to 2012 in violation of the Sherman Antitrust Act, codified at 15 U.S.C. §§ 1 and 2, that forced Oxbow to pay higher prices to ship coal and petcoke. *See id.* at ¶¶ 1–8, 14–15. Specifically, Oxbow believes that UP and BNSF conspired to (1) fix fuel rates applied to commercial rail freight service above competitive levels through a uniform fuel surcharge and (2) allocate certain markets for coal shipment to each other, granting UP a monopoly in at least one region of the country. *Id.* at ¶¶ 1–8. Oxbow claims it paid Defendants more than $50,000,000 in illegal fuel surcharges as a result of the conspiracy. *Id.* at ¶ 137. Oxbow seeks to recover treble damages under 15 U.S.C. § 15, as well as its "lost business and profits" that proximately resulted from the conspiracy. *Id.* at ¶ 134 & p. 54.

In their motion, Defendants request that the Court compel Oxbow to add William I. Koch ("Koch"), Oxbow's founder, CEO, and principle owner as a document custodian whose records will be searched for material responsive to Plaintiffs' discovery requests. *See* Mot. at 1–2, 12–14. Defendants maintain that Koch indisputably possesses relevant, unique information responsive to their requests, and argue that Oxbow has improperly refused to produce this information based on the unsupported theory that production of his documents would be disproportionately burdensome and duplicative of the documents produced from the search of the nineteen other Oxbow document custodians' files. *Id.* Based upon its review of the documents already produced from the other Oxbow custodians, Defendants believe that Koch's records contain information that would, among other things, reveal that market forces—as opposed to Defendants' alleged collusion—contributed

to the increasing rail freight costs and any of Oxbow's lost profits. *Id.* at 5–9. Relatedly, Defendants assert that their discovery request is proportionate and reasonable in light of the facts of this case, including the tens of millions of dollars that Oxbow seeks in damages. *Id.* at 9–14.

In their opposition, Oxbow argues that Defendants have failed to satisfy their burden of demonstrating that the discovery they seek is responsive and not unduly burdensome. *See* Resp. at 1. Based on their calculations, Oxbow estimated that adding Koch as a document custodian would result in roughly 130 gigabytes of additional documents to be filtered through the parties' previously-agreed-upon search terms, a process that Oxbow initially estimated would cost $250,000. *Id.* at 4. Oxbow further contends that many of Koch's documents would likely be duplicative of the other custodians' documents or only marginally responsive given Koch's senior position over a conglomerate of Oxbow companies, only some of which are involved in the coal and petcoke businesses. *Id.* at 7–15. Despite these arguments, Oxbow represented at the first hearing on Defendants' motion that it was open to analyzing a random sample of Koch's records using the agreed-upon search terms to provide the parties with concrete numbers regarding the responsiveness of Koch's documents to the terms and with a basis to negotiate new search terms if necessary. *See* 6/14/17 TR. at 53:22–56:9. Accordingly, the undersigned held Defendants' motion in abeyance pending the analysis of a sample of Koch's documents and the parties' attempt to negotiate a resolution of the dispute themselves. *See* Order at 1.

Following the hearing, Oxbow collected a total of 467,614 documents from Koch's electronic and physical files and provided them to a vendor for processing. Report at 1–2. After removing any duplicative records, the vendor searched Koch's documents using the previously-agreed-upon search terms, which yielded 45,639 document hits—82,600 documents in total when

3

including "families" of documents. *See id.* at 2.[2] The vendor collected a random sample of ten percent of these hits and any associated families—12,074 documents in total—and provided them to Oxbow for review for privilege and responsiveness. Of these 12,074 documents, Oxbow determined that approximately 1,300 documents—11.67 percent of them—were actually responsive to the search terms and produced them to Defendants. *Id.* at 3. In total, the initial processing of Koch's records and review of the sample documents cost Oxbow $57,197.95. *Id.* at 3–4. Based on its experience reviewing the sample documents, Oxbow now estimates that it will cost approximately $85,000 to process, review, and produce the remainder of Koch's documents to the Defendants, bringing the total cost of the effort, including the review of the sample documents, to approximately $142,000—significantly less than Oxbow's original estimate of $250,000. *Id.* at 3–4; *see also* Resp. at 4. Oxbow's initial estimate was based on its prediction that, after processing, searching, and filtering Koch's documents through the agreed-upon search terms, it would have to review approximately 214,000 documents for false positives and privileged information before producing the responsive documents to Defendants. *See* Resp. at 18. In reality, applying the agreed-upon search terms yielded only 45,639 hits on Koch's documents—82,600 documents when including document families. Report at 2.

Unfortunately, the sampling effort did not result in the parties resolving the dispute without further intervention of the Court. In their August 2, 2017 Joint Status Report, the parties advance dramatically different interpretations of the significance of the sampling's results. Despite the lower-than-expected cost of the analysis, Oxbow believes that the results confirm that a complete

---

[2] Counsel for Oxbow explained that "families" is a term used to describe attachments to a responsive document. 8/24/17 TR. at 36:13–37:1. For example, if a search of Koch's documents using a random search term yields one email, an attachment to that email, regardless of whether the attachment is itself responsive to the search term, would fall within that email's "family" and be included in any subsequent relevancy review. *See id.*

4

production of Koch's documents would be an unnecessary burden and expense, particularly in light of the documents' low responsiveness rate to the search terms. *Id.* at 5–6. Further, following its sampling of Koch's documents, Oxbow refused to negotiate with Defendants over the agreed-upon search terms, or to provide Defendants with the data from the sampling necessary to evaluate the effectiveness of the terms. *Id.* at 11. According to Oxbow, the only purpose for doing so would be to negotiate narrower search terms, an effort that Oxbow deemed not worth the attorney time it would take to accomplish because it was unlikely "to dramatically reduce the number of hits Oxbow will ultimately need to review." Pl. Supp. Letter Brief at 1. Accordingly, Plaintiffs asked again for the Court to deny the motion to compel or, in the alternative, order Defendants to bear the cost of the production of the documents it seeks. Report at 7.

Defendants, in turn, view the results of the sampling as proof of the existence of relevant and unique documents in Koch's records. *Id.* at 9–10. While acknowledging that Koch's records are less responsive to the search terms than the other Oxbow custodians' files, Defendants note that such a result is to be expected because the other custodians deal more exclusively with Oxbow's coal and petcoke business than Koch, Oxbow's CEO. *Id.* at 10. Moreover, the lower-than-expected number of hits in Koch's records confirms to Defendants that the search terms effectively narrowed the universe of documents that Oxbow must review for production. *Id.* Further, Defendants contend that the total number of responsive documents likely in Koch's possession—approximately 10,000, based on Defendants' extrapolation from the results of the sampling effort—is significant and roughly equivalent to the total number of documents produced by each of Oxbow's other custodians. *Id.* And while Defendants represent that they *were willing* to renegotiate the agreed-upon search terms to tailor future searches following the sampling, Oxbow's refusal to do so, or to even share the data from the sampling necessary to have an informed discussion

5

of the effectiveness of the search terms, has dampened its enthusiasm for the task. *Id.* at 11. Given Oxbow's refusal and the large amount of money at stake in the litigation, Defendants oppose Oxbow's request for cost-sharing and seek a ruling on their motion to compel now. *Id.*

The Court's ruling follows below.

## LEGAL STANDARD

Rule 37 of the Federal Rules of Civil Procedure provides that, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure of discovery" from a party who fails to comply with its discovery obligations. Fed. R. Civ. P. 37(a). The party that brings the motion to compel bears the initial burden of "proving that the opposing party's answers were incomplete," *Equal Rights Ctr. v. Post Prop, Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007) (internal citations omitted), and "explaining how the requested information is relevant." *Jewish War Veterans of the United States of America, Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007). If the movant satisfies this burden, the burden then shifts to the non-movant "to explain why discovery should not be permitted." *Id.*

As for the scope of discovery, it has long been recognized that "[u]nder the broad sweep of Rule 26(b)(1) of the Federal Rules of Civil Procedure, a party 'may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved.'" *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1348–49 (D.C. Cir. 1984) (quoting Fed. R. Civ. P. 26(b)(1)). The broad presumption in favor of discovery of relevant information embodied in Rule 26 is not without limits, however. Instead, under the amended Rule 26,[3] discovery must be relevant

---

[3] Rule 26 of our Federal Rules of Civil Procedure was amended on December 1, 2015 to read:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the

*and* "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). To determine whether a discovery request is proportional, courts weigh the following six factors: "(1) the importance of the issues at stake in this action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit." *Williams v. BASF Catalysts, LLC*, Civ. Action No. 11-1754, 2017 WL 3317295, at *4 (D.N.J. Aug. 3, 2017) (citing Fed. R. Civ. P. 26(b)(1)); *Arrow Enter. Computing Solutions, Inc. v. BlueAlly, LLC*, No. 5:15-CV-37-FL, 2017 WL 876266, at *4 (E.D.N.C. Mar. 3, 2017); *FTC v. Staples, Inc.*, Civ. Action No. 15-2115 (EGS), 2016 WL 4194045, at *2 (D.D.C. Feb. 26, 2016).

"[N]o single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional," and all proportionality determinations must be made on a case-by-case basis. *Williams*, 2017 WL 3317295, at *4 (internal citations omitted); *see also Bell v. Reading Hosp.*, Civ. Action No. 13-5927, 2016 WL 162991, at *2 (E.D. Pa. Jan. 14, 2016). To be sure, however, "the amendments to Rule 26(b) do not alter the basic allocation of the burden on the party resisting discovery to—in order to successfully resist a motion to compel—specifically object and show that . . . a discovery request would impose an undue burden or expense or is otherwise objectionable." *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 226 (N.D. Tex. 2016).

---

proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The 2015 amendments have brought to the forefront of Rule 26 the concept of proportionality—that is, the duty of the parties and the court to make a "case-specific determination of the appropriate scope of discovery," considering the various factors set forth in the Rule. *Id.* This concept was previously buried in subsection (b)(2)(C)(iii), but it now enjoys pride of place in the amended Rule. *Id.*; *see also In re Symbol Tech., Inc. Securities Litigation*, CV 05-3923, 2017 WL 1233842, at *7 (E.D.N.Y. March 21, 2017) ("Rule 26(b)(1), as amended, although not fundamentally different in scope from the previous version constitutes a reemphasis on the importance of proportionality in discovery but not a substantive change in the law." (internal quotation marks and citations omitted)).

**DISCUSSION**

Oxbow ultimately does not dispute that Koch's records contain documents that are responsive to the parties' negotiated search terms and relevant to this litigation. *See* Pl. Supp. Letter Brief at 1–2. In fact, Oxbow has already produced approximately 1,300 such documents as a result of the sampling of Koch's records. Instead, Oxbow objects to Defendants' request that it be compelled to review and produce discovery from Koch's remaining documents because doing so would be unduly burdensome and because the benefit to Defendants would not justify that effort and expense. Resp. at 16–21; *see also* Report at 4–7; Pl. Supp. Letter Brief at 1–2. Indeed, Oxbow argues that the cost of complying with Defendants' request is so unreasonable that, if the undersigned is inclined to order such discovery, the Court should ignore the long-standing presumption that a "responding party must bear the expense of complying with discovery requests," and order Defendants to cover the costs of the production. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978).

The Court is unpersuaded by Oxbow's arguments. In its briefing, Oxbow declines to address any of the other proportionality factors highlighted in Rule 26—namely, the importance of the issues at stake in this action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, or the importance of the discovery in resolving the issues in this case, *see* Fed. R. Civ. P. 26(b)(1)—stressing only that the burden and cost of complying with Defendants' request would outweigh its likely benefit. *Id.* Weighing the six Rule 26 proportionality factors, however, demonstrates that adding Koch as a custodian of documents to be searched for material responsive to Defendants' discovery requests in this matter will be neither unduly burdensome nor unreasonably expensive in light of the facts of this case. Likewise, the Court finds

that the instant circumstances do not warrant shifting the costs of doing so to Defendants. Accordingly, Defendants' motion to compel will be granted and Plaintiffs shall be ordered to produce all remaining responsive documents from Koch's file, the cost of which Plaintiffs shall bear.

### A. The Proportionality of Defendants' Discovery Request

#### *1. The Importance of the Issues at Stake*

This first Rule 26 factor calls for the Court to "examine[] 'the significance of the substantive issues [at stake in the litigation], as measured in philosophic, social, or institutional terms.'" *BlueAlly*, 2017 WL 876266, at *4 (quoting Fed. R. Civ. P. 26 advisory committee's note). For example, courts should carefully scrutinize discovery requests in "cases in public policy spheres, such as employment practices, free speech, and other matters," which often "seek[] to vindicate vitally important personal and public values" and "may have importance far beyond the monetary amount involved." Fed. R. Civ. P. 26 advisory committee's note. By Oxbow's own suggestion, the instant case involves important issues and has the potential to broadly impact a wide range of third-parties not involved in the litigation. Oxbow has stated that a favorable ruling from this Court "could benefit all of America's shippers and consumers, saving billions of dollars a year in reduced rail freight charges in the United States." Def. Ex. 22 [Dkt. 105-23] at 2. What is more, Koch himself has publicly accused Defendants of long relying on "overreaching and abusive behavior" to "shortchange[] the American consumer," and of "using aggressive tactics to prevent competition and intimidate customers," including "American farmers, miners[,] and shippers[.]" *Id.* at 3.

Defendants, for their part, do not disagree with Oxbow's estimation of the significance of this case, noting that Oxbow has made serious allegations against Defendants that have the poten-

tial to impact many people. *See* Mot. at 12–13. Accordingly, the undersigned finds that the importance of the issues at stake here weighs in favor of granting Defendants' discovery request, which Oxbow concedes will produce documents that are relevant to the resolution of this case's claims. *See BlueAlly*, 2017 WL 876266, at *4 (finding that this factor weighs against allowing discovery where the issues at stake in the case would not "have an impact beyond the parties involved").

### 2. *The Amount in Controversy*

Under the second proportionality factor, courts should "compare[] the cost of discovery to the amount in controversy to determine [the proposed discovery's] proportionality." *Id.* (citing *Bell*, 2016 WL 162991, at *3). Here, Oxbow seeks to recover the more than $50,000,000 in illegal fuel surcharges it alleges were the result of the Defendants' collusion. Am. Compl. at ¶ 137. It also seeks recovery of its "lost business and profits," and a trebling of its damages under 15 U.S.C. § 15. Am. Compl. at ¶¶ 18, 134 & p. 54. While Oxbow does not specifically quantify these damages in its Amended Complaint, Defendants have suggested that Oxbow seeks to recover over $150 million—a figure that Defendants do not appear to dispute. *See* Mot. at 13; *see generally* Resp. Meanwhile, Oxbow's estimated cost of complying with Defendants' proposed discovery is approximately $140,000, including the $57,197.95 that Oxbow has already spent on sampling Koch's documents. Given the very substantial amount of damages that Oxbow seeks to recover in this case, its cost of complying with the discovery request to produce information relevant to Defendants' defense of Oxbow's claims does not strike the undersigned as excessive. Accordingly, the Court finds that this factor, too, favors granting Defendants' discovery request.

### 3. *The Parties' Relative Access to the Relevant Information*

In considering this factor, courts look for "information asymmetry"—a circumstance in which one party has very little discoverable information while the other party has vast amounts of discoverable information. *See* Fed. R. Civ. P. 26 advisory committee's notes. In such a case, "the burden of responding to discovery lies heavier on the party who has more information, and properly so." *Id.* To the extent this factor is applicable here, any informational asymmetry favors Oxbow. Indeed, neither party disputes that Koch is in possession of relevant, unique information, and there appears to be no other way for Defendants to obtain this information than moving to compel Oxbow to produce it. Accordingly, the Court finds that this factor militates in favor of granting Defendants' request.

### 4. *The Parties' Resources*

Taking into account the parties' resources, the Court again concludes that this factor weighs in favor of granting Defendants' request. While discovery should not be used to "wage a war of attrition or as a device to coerce a party," regardless of whether the party is "financially weak or affluent," *see* Fed. R. Civ. P. 26 advisory committee's notes, Oxbow represented at the hearing in this matter that it does not object to Defendants' request based on an inability to pay for it. 8/24/17 TR. at 46:25–47:12. Accordingly, the undersigned sees no reason to deny Defendants' request on this basis.

### 5. *The Importance of the Discovery in Resolving the Issues*

This fifth factor requires courts to determine whether "[t]he issues at stake are at the very heart of [the] litigation." *Labrier v. State Farm Fire and Casualty Co.*, 314 F.R.D. 637, 643 (W.D. Mo. 2016); *see also BlueAlly*, 2017 WL 876266, at *5 (looking at whether "this discovery request goes to a central issue or a side one"). Though Oxbow initially objected to the relevance of any

documents in Koch's possession, *see* Resp. at 7–9, it has since acknowledged that Koch's records contain relevant and unique documents, although not in the same ratio as other Oxbow custodians' records, and has produced a portion of these documents to Defendants, *see* Pl. Supp. Letter Brief at 1–2. The Court appreciates that Koch's files do not appear to contain as a high a proportion of responsive documents as the files of custodians who dealt exclusively with Oxbow's coal and petcoke business, but it strains reason to suggest that the principal owner and CEO of a company, who has publicly commented on the importance and magnitude of litigation to which his company is a party and in which the financial health of his company is at issue, *see* Def. Ex. 22 [Dkt. 105-23] at 2–3, would have no unique information relevant to that litigation in his possession. While it may be too early in the production process to determine exactly how significant Koch's records are, the categories of relevant documents identified by Defendants after reviewing the approximately 1,300 documents produced from Koch's files indicates to the Court that Defendants' discovery request has merit and is not intended to be the first strike in a war of attrition or a coercion tactic.[4] Accordingly, the Court concludes that this factor favors granting Defendants' proposed discovery.

      6.     *Whether the Burden or Expense of the Proposed Discovery Outweighs its Likely Benefit*

Oxbow rests its argument entirely on this final factor, asserting that it is the most important of the Rule 26 proportionality factors and counsels against granting Defendants' proposed discovery. In support of its argument, Oxbow contends that its random sampling analysis suggests that

---

[4] After reviewing Oxbow's initial production of roughly 1,300 documents from Koch's files, Defendants believe that Koch is a unique source of documents regarding, among other things, Oxbow's finances and business strategies with respect to the coal and petcoke businesses at issue during the relevant time period. *See* Def. Supp. Letter Brief at 1–2. These sorts of documents would surely bear on Oxbow's claim that Defendants' conduct was the source of damage to those Oxbow businesses and resulted in lost profits, and thus strike the Court as critical in resolving the issues in this case. *See* Am. Compl. at ¶ 134.

12

approximately half of the agreed-upon search terms' hits on Koch's documents are false positives with no or only marginal relevance to the litigation. Pl. Supp. Letter Brief at 1–2. To be sure, Oxbow also concedes that the cost of processing Koch's records for discovery is far less than it originally estimated and that the search terms narrowed the scope of Koch's responsive documents far more than it originally anticipated. *Id.* Nevertheless, it asserts that the $85,000 that it estimates it will take to review and produce the remaining responsive documents from Koch's files is pro-hibitively burdensome. *Id*

The Court disagrees. The cost of reviewing and producing Koch's documents does not strike the undersigned as unduly burdensome or disproportionate, especially given the discovery conducted to date and the damages that Oxbow seeks in this action. Plaintiffs' counsel explained at the second hearing in this matter that Oxbow has spent $1.391 million to date on reviewing and producing approximately 584,000 documents from its nineteen other custodians and Oxbow's email archive. *See* 8/24/17 TR. at 44:22–45:10. And again, Oxbow seeks tens of millions of dollars from Defendants. Through that lens, the estimated cost of reviewing and producing Koch's responsive documents—even considering the total approximate cost of $142,000 for that effort, which includes the expense of the sampling effort—while certainly high, is not so unreasonably high as to warrant rejecting Defendants' request out of hand. *See Zubulake v. UBS Warburg, LLC*, 217 F.R.D. 309, 321 (S.D.N.Y. 2003) (explaining, in the context of a cost-shifting request, that "[a] response to a discovery request costing $100,000 sounds (and is) costly, but in a case poten-tially worth millions of dollars, the cost of responding may not be unduly burdensome"); *Xpedior Creditor Trust v. Credit Suisse First Boston (USA), Inc.*, 309 F. Supp. 2d 459, 466 (S.D.N.Y. 2003) (finding no "undue burden or expense" to justify cost-shifting where the requested discovery cost approximately $400,000 but the litigation involved at least $68.7 million in damages). Moreover,

based on the parties' representations at the second hearing in this matter, the projected number of responsive and unique documents in Koch's files—approximately 10,000—is largely consistent with the number of responsive and unique documents produced by the other Oxbow custodians, and the responsiveness rate of Koch's documents—11.67 percent—while low, is not the lowest among Oxbow's custodians.[5]

In light of the above analysis—including the undersigned's assessment of each of the Rule 26 proportionality factors, all of which weigh in favor of granting Defendants' motion—the Court is unwilling to find that the burden of reviewing the remaining 65,000 responsive documents for a fraction of the cost of discovery to date should preclude Defendants' proposed request. *See BlueAlly*, 2017 WL 876266, at *5 ("This [last Rule 26] factor may combine all the previous factors into a final analysis of burdens versus benefits." (citing Fed. R. Civ. P. 26 advisory committee's notes)). For all of the reasons stated above, and absent any evidence establishing that Defendants are using the discovery of Koch's records to wage a war of attrition or as a device to coerce Oxbow, the Court finds that Defendants' motion must be granted.[6]

---

[5] At the second hearing in this matter, counsel for Oxbow provided the Court and Defendants with a chart that summarized the number of documents in the possession of each of Oxbow's nineteen custodians and Oxbow's production of any relevant and responsive documents in the custodians' possession to date. The chart also included figures for the production of the approximately 1,300 documents from Koch's files from the sampling, and figures for Oxbow's email archive, which contains 237,948 documents total. According to this chart, 13.36 percent of one custodian's documents and only 3.03 percent of another's were responsive to the parties' agreed-upon search terms. To be sure, the chart also indicates that the average responsiveness rate of the nineteen custodians' documents to the search terms is approximately 65 percent, and searches of all but one custodian's documents yielded a higher rate than Koch's.

[6] Despite the above, Oxbow argued at the second hearing that the most efficient way to proceed would be for Defendants to identify the categories of documents they seek based on the sample of Koch's documents and then negotiate a new, more-tailored set of search terms based on these categories to use to search the remaining 65,000 documents. *See* 8/24/17 TR. at 28:4–32:19, 57:10–57:25. This proposal is untenable for a number of reasons. As an initial matter, the Court is doubtful that additional negotiations would prove productive; the parties have had months to negotiate a resolution to the instant dispute and have failed to do so, even after the Court intervened and placed this motion in abeyance in June 2017. Nor would the delay for additional negotiations be justified, even if it might save Oxbow some money at the margins. After all, the Court has found that the production of documents from Koch's files is legitimate under the relevant Federal Rules of Civil Procedure. Moreover, Oxbow's request for additional time to negotiate new search terms is inconsistent with its previous position that it would not "be productive to renegotiate the search terms" because "[r]enegotiating the terms is not likely to dramatically reduce the number of hits that Oxbow will ultimately need to review" and because of the possibility "that the cost in attorney time for renegotiating new

## B. Oxbow's Request to Shift Discovery Costs to Defendants

In the event that the Court grants Defendants' motion, Oxbow asks in the alternative that the Court direct Defendants to bear the costs of the production, either in whole or in part. *See* Report at 7. The Court denies that request. "The presumption under the Federal Rules of Civil Procedure is that the producing party bears the costs of complying with a discovery request," but "the Court may shift a portion of the costs to the requesting party in the event that the discovery request would unduly burden the producing party." *D'Onofrio v. SFX Sports Group, Inc.*, 254 F.R.D. 129, 134 (D.D.C. 2008) (citing *Peskoff v. Faber*, 251 F.R.D. 59, 61 (D.D.C. 2008)). While the seminal case on cost-shifting in electronic discovery disputes focused its analysis on the shifting of expenses arising from the compelled production of "inaccessible" electronic information, *see Zubulake*, 217 F.R.D. at 318, courts have, over the years, looked beyond accessibility to determine whether to shift discovery costs, *see, e.g.*, *FDIC v. Brudnicki*, 291 F.R.D. 669, 676 (N.D. Fla. 2013) ("While the Court in *Zubulake* was focusing upon the issue of cost shifting when dealing with inaccessible ESI, and other courts have required a showing of inaccessibility for cost shifting, other courts have held that Rule 26(c) permits cost shifting as part of enforcing proportionality limits.").

Reflecting this development, Rule 26 was amended in 2015 to expressly recognize the courts' capacity to order cost-shifting in the hopes of forestalling "the temptation [that] some parties may feel to contest" the courts' authority to do so. *See* Fed. R. Civ. P. 26 advisory committee's notes. Specifically, the amendment added subsection 26(c)(1)(B), which permits a court to issue an order, for good cause, to protect a party from "annoyance, embarrassment, oppression, or undue

---

search terms would exceed whatever savings Oxbow might achieve by a marginal reduction in the number of reviewable documents." Pl. Supp. Letter Brief at 1. The Court credits Oxbow's representations prior to the hearing more than its representations at the hearing after the Court made clear that it was inclined to grant Defendants' motion.

burden or expense," by specifying the terms of discovery, "including time and place or the allocation of expenses[.]" *Id.* at 26(c)(1)(B). In considering this amendment, courts have found that determining whether a discovery request warrants cost-shifting based on its burdensomeness turns on: the needs of the case; the amount in controversy; the parties' resources; the importance of the issues at stake; and the importance of the proposed discovery in resolving those issues. *See McClurg v. Mallinckrodt, Inc.*, Case No. 4:12-CV-00361, 2016 WL 7178745, at *3 (E.D. Mo. Dec. 9, 2016) (citation omitted); *United States ex rel. Bibby v. Well Fargo Bank, N.A.*, Civ. Action No. 1:06-CV-0547, 2016 WL 7365195, at *2–3 (N.D. Ga. May 26, 2016) (finding that, "under limited circumstances, a party may seek to share reasonable costs related to reviewing documents prior to their production" consistent with Rule 26(c)(1)). To be sure, however, this amendment does not "imply that cost-shifting should become a common practice," and "[c]ourts and parties should continue to assume that a responding party ordinarily bears the costs of responding." Fed. R. Civ. P. 26 advisory committee's notes.

Oxbow has failed to rebut the presumption imposed by the Federal Rules of Civil Procedure that it should bear the cost of complying with Defendants' proposed discovery. The above analysis of the Rule 26(b) proportionality factors, which are essentially identical to the factors courts have considered in determining whether to shift discovery costs under Rule 26(c), confirms that Defendants' proposed discovery does not impose an undue burden or expense that warrants a reallocation of expenses. Suffice it to say that, in this case, Oxbow must bear the cost of producing the unique and relevant discovery in its possession, custody and control needed by Defendants to defend against the allegations it raises in the Amended Complaint. Accordingly, Oxbow's request to shift discovery fees to Defendants in whole or in part is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel the production of documents from Koch's records is **GRANTED**. Oxbow shall produce all unique and relevant documents from Koch's records within 30 days of the entry of this Memorandum Opinion. An appropriate Order will accompany this Memorandum Opinion.


Date:  September 11, 2017                                    _____
                                                             G. MICHAEL HARVEY
                                                             UNITED STATES MAGISTRATE JUDGE