UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION )<br><br>This document relates to: )<br><br>ALL DIRECT PURCHASER CASES )<br><br>OXBOW CARBON & MINERALS LLC, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>UNION PACIFIC RAILROAD CO., et al., )<br><br>Defendants. ) | MDL Docket No. 1869<br>Miscellaneous No. 07-0489 (PLF)<br><br><br><br><br><br><br>Civil Action No. 11-1049 (PLF) |

OPINION

Defendants in Rail Freight MDL No. 1869 and defendants in Oxbow move

pursuant to 28 U.S.C. § 1292(b) to certify this Court's order on the meaning of 49 U.S.C.

§ 10706(a)(3)(B)(ii) for interlocutory appeal. Defendants' Motion for Certification Pursuant

to 28 U.S.C. § 1292(b) and Supporting Statement of Points and Authorities ("Def. Mot.") [Dkt.

No. 1010]; see also Defendants' Motion for Certification Pursuant to 28 U.S.C. § 1292(b) and

Supporting Statement of Points and Authorities, Oxbow Carbon & Minerals LLC v. Union Pac.

R.R. Co., Civil Action No. 11-1049 [Dkt. No. 220].[1] Plaintiffs in Rail Freight MDL No. 1869

---

[1]      Unless otherwise specified, citations to docket entries refer to the first above captioned matter, In re Rail Freight Fuel Surcharge Antitrust Litigation, MDL No. 1869, Miscellaneous No. 07-0489 ("Rail Freight MDL No. 1869" or "MDL No. 1869"). Because the

and plaintiffs in Oxbow oppose the motions.  Plaintiffs' Opposition to Defendants' Motion for

Certification Pursuant to 28 U.S.C. § 1292(b) ("Pl. Opp.") [Dkt. No. 1013]; see also Plaintiffs'

Opposition to Defendants' Motion for Certification Pursuant to 28 U.S.C. § 1292(b), Oxbow

Carbon & Minerals LLC v. Union Pac. R.R. Co., Civil Action No. 11-1049 [Dkt. No. 223].

Upon consideration of the parties' written submissions, the relevant case law, relevant portions

of the record in this case, and for the reasons discussed below, the Court will grant defendants'

motions.[2]

## I.  FACTUAL AND PROCEDURAL HISTORY

These cases have been the subject of numerous prior opinions, which recount the

factual and procedural history at length.  See In re Rail Freight Fuel Surcharge Antitrust Litig.

("Rail Freight I"), 587 F. Supp. 2d 27, 29-31 (D.D.C. 2008); In re Rail Freight Fuel Surcharge

---

briefs filed in Oxbow in relation to the pending motion appear nearly identical to the
corresponding briefs filed in Rail Freight, the Court's opinion cites only to the briefing on the
Rail Freight docket.

[2]      The Court has reviewed the following documents in connection with the pending
motion filed in Rail Freight MDL No. 1869:  Second Consolidated Amended Class Action
Complaint ("Second Am. Class Action Compl.") [Dkt. No. 324]; Defendants' Memorandum in
Support of Motion to Exclude Interline-Related Communications from Consideration for Class
Certification or Any Other Purpose Prohibited by 49 U.S.C. § 10706 ("Def. Class Cert. Mem.
Exclude") [Dkt. No. 420]; August 26, 2020 Hearing Transcript ("Aug. 26, 2020 Hr'g Tr.") [Dkt.
No. 985]; Defendants' Motion for Certification Pursuant to 28 U.S.C. § 1292(b) and Supporting
Statements of Points and Authorities ("Def. Mot.") [Dkt. No. 1010]; Plaintiffs' Opposition to
Defendants' Motion for Certification Pursuant to 28 U.S.C. § 1292(b) ("Pl. Opp.") [Dkt.
No. 1013]; and Defendants' Reply in Support of Motion for Certification Pursuant to 28 U.S.C.
§ 1292(b) ("Def. Reply") [Dkt. No. 1015].

The Court has reviewed the following documents in connection with the pending
motion filed in Oxbow:  First Amended Complaint ("Oxbow First Am. Compl.") [Dkt. No. 53];
Defendants' Motion for Certification Pursuant to 28 U.S.C. § 1292(b) and Supporting Statement
of Points and Authorities [Dkt. No. 220]; Plaintiffs' Opposition to Defendants' Motion for
Certification Pursuant to 28 U.S.C. § 1292(b) [Dkt. No. 223]; and Defendants' Reply in Support
of Motion for Certification Pursuant to 28 U.S.C. § 1292(b) [Dkt. No. 225].

Antitrust Litig. ("Rail Freight II"), 593 F. Supp. 2d 29, 32, 34-35 (D.D.C.  2008), aff'd sub nom.

Fayus Enters. v. BNSF Ry. Co., 602 F.3d 444, 445-46, 454 (D.C. Cir. 2010); In re Rail Freight

Fuel Surcharge Antitrust Litig. ("Rail Freight III"), 287 F.R.D. 1, 11-20 (D.D.C. 2012), vacated

sub nom. In re Rail Freight Fuel Surcharge Antitrust Litig. – MDL No. 1869, 725 F.3d 244 (D.C.

Cir. 2013); In re Rail Freight Fuel Surcharge Antitrust Litig. ("Rail Freight IV"), 292 F.

Supp. 3d 14, 33-38 (D.D.C. 2017), aff'd sub nom. In re Rail Freight Fuel Surcharge Antitrust

Litig. – MDL No. 1869, 934 F.3d 619 (D.C. Cir. 2019); In re Rail Freight Fuel Surcharge

Antitrust Litig. ("Rail Freight V"), MDL No. 1869, 07-mc-0289, 2021 WL 663669, at *2-4

(D.D.C. Feb. 19, 2021); see also Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.

("Oxbow I"), 926 F. Supp. 2d 36, 39-40 (D.D.C. 2013); Oxbow Carbon & Minerals LLC v.

Union Pac. R.R. Co. ("Oxbow II"), 81 F. Supp. 3d 1, 5-6 (D.D.C. 2015).

These cases involve allegations of a conspiracy to fix prices in violation of the

Sherman Antitrust Act, 15 U.S.C. § 1.  Plaintiffs in Rail Freight, purchasers of rail freight

transportation services, allege that defendants, BNSF Railway Company, CSX Transportation,

Inc., Norfolk Southern Railway Company, and Union Pacific Railroad Company, "engaged in a

price-fixing conspiracy to coordinate their fuel surcharge programs as a means to impose

supra-competitive total price increases on their shipping customers."  Rail Freight IV, 292 F.

Supp. 3d at 34.  Similarly, plaintiffs in Oxbow allege that defendants Union Pacific Railroad

Company and BNSF Railway Company conspired to "fix prices above competitive levels

through a uniform fuel surcharge."  Oxbow II, 81 F. Supp. 3d at 5.  Many of the allegations in

Oxbow are "virtually identical" to the allegations in Rail Freight.  Id. at 5 n.3.

For over a decade, the parties in Rail Freight have been engaged in motions

practice surrounding dismissal of the complaints and efforts to certify a class.  See Rail

Freight V, 2021 WL 663669, at *2-3 (discussing the procedural history of the case).  In opposing

class certification, defendants in Rail Freight sought to exclude from consideration evidence of

interline-related communications, or communications concerning shared traffic, under 49 U.S.C.

§ 10706(a)(3)(B)(ii) ("Section 10706").  Def. Class Cert. Mem. Exclude at 1-28.  Section 10706

provides that "evidence of a discussion or agreement between or among" rail carriers may be

inadmissible in an action alleging antitrust violations, "if the discussion or agreement . . .

concerned an interline movement of the rail carrier, and the discussion or agreement would not,

considered by itself, violate the [antitrust] laws."  49 U.S.C. § 10706(a)(3)(B)(ii); Rail

Freight V, 2021 WL 663669, at *2-3.  The Court initially granted class certification without

relying on the disputed evidence or ruling on defendants' Section 10706 motion.  Rail

Freight III, 287 F.R.D. at 10, 20, 74.  Following remand from the D.C. Circuit, the Court denied

class certification, again without relying on the disputed evidence or ruling on defendants'

Section 10706 motion.  Rail Freight IV, 292 F. Supp. 3d at 145.

> After the Court denied class certification, the absent putative former class

members filed individual actions in district courts across the country, which the Judicial Panel on

Multidistrict Litigation consolidated into a separate proceeding before Chief Judge Howell, MDL

No. 2952.  Transfer Order at 1, In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II),

Miscellaneous No. 20-0008, MDL No. 2952 (D.D.C.) [Dkt. No. 1].  Aside from limited factual

additions, the approximately ninety-three complaints that have now been transferred to MDL

No. 2952 generally repeat the claims made by the putative class members in Rail Freight MDL

No. 1869 before the undersigned.  See In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II),

Miscellaneous No. 20-0008, MDL No. 2952, 2020 WL 5016922, at *5-6 (D.D.C.

Aug. 25, 2020).

On December 19, 2019, this Court invited plaintiffs and defendants in Rail Freight MDL No. 1869 and Oxbow, as well as the new plaintiffs in MDL No. 2952 before Chief Judge Howell, to file additional memoranda addressing defendants' still-pending motions concerning Section 10706.  Memorandum Opinion and Order [Dkt. No. 918] at 3.  The Court also invited the United States to submit a Statement of Interest reflecting the views of the Department of Justice, the Federal Trade Commission, and the Surface Transportation Board. March 16, 2020 Order [Dkt. No. 947] at 2.  On August 26, 2020, the Court heard oral arguments on the interpretation and application of Section 10706 from defendants, named plaintiffs in Rail Freight MDL No. 1869, new plaintiffs in MDL No. 2952, and the Department of Justice. Aug. 26, 2020 Minute Entry; see also Aug. 26, 2020 Hr'g Tr. at 1-5.

On February 19, 2021, the Court issued its opinion and order interpreting Section 10706 and denying defendants' motions to exclude interline-related communications. Rail Freight V, 2021 WL 663669; February 19, 2021 Order [Dkt. No. 1007].  The Court analyzed the text, history, and purpose of Section 10706 and reached conclusions regarding burdens of proof, the meaning of phrases in the statute, and the nature of the statute's bar on inferences.  Rail Freight V, 2021 WL 663669, at *5-26.  Most relevant here, the Court held that "to be protected by the statute, an interline movement must be an identifiable movement or movements with identifiable circumstances, such as a specific shipper, specific shipments, and specific destinations."  Id., at *19.  The Court also held that Section 10706 does not require wholesale admission or exclusion of entire items of evidence, and that the statutory protections may instead be implemented through "[r]edaction of the inadmissible portions," and "to the extent redaction is impracticable or inadvisable," then "limiting instructions may be employed." Id. at *17; see also id. at *23.

5

On March 5, 2021, defendants filed the present motions seeking certification for interlocutory appeal, arguing that two aspects of the Court's ruling in Rail Freight V qualify for immediate appeal under 28 U.S.C. § 1292(b) ("Section 1292(b)"):  (1) "that the phrase 'an interline movement' in Section 10706 means that the statutory protections apply *only* to discussions or agreements about 'identifiable . . . movements with identifiable circumstances, such as a specific shipper, specific shipments, and specific destinations,'" and (2) that courts may implement the protections of Section 10706 through redactions and limiting instructions.  Def. Mot. at 1-2 (quoting Rail Freight V, 2021 WL 663669, at *19).  On March 19, 2021, plaintiffs filed their memoranda of law opposing interlocutory appeal, and on March 26, 2021, defendants filed their replies in support of certification.  Pl. Opp.; Def. Reply.

## II.  LEGAL STANDARD

Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).  This provision represents a departure from the "basic policy of postponing appellate review until after the entry of a final judgment," Coopers & Lybrand v. Livesay, 437 U.S. 463, 475 (1978) (citations omitted), and provides "an avenue for review" of certain nonfinal orders "in appropriate cases," Van Cauwenberghe v. Biard, 486 U.S. 517, 530 (1988).

Pursuant to Section 1292(b), the district court may certify an order for immediate appeal if it makes the following three findings:  "(1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion concerning the ruling exists; and (3) an immediate appeal would materially advance [the ultimate termination of] the litigation."  Molock

v. Whole Foods Mkt. Grp., 317 F. Supp. 3d 1, 4 (D.D.C. 2018) (quoting APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F. Supp. 2d 90, 95 (D.D.C. 2003)).  Interlocutory appeal is only appropriate if all three requirements are satisfied.  See Swint v. Chambers Country Comm'n, 514 U.S. 35, 46 (1995) ("[Section] 1292(b)[] accord[s] the district courts circumscribed authority to certify for immediate appeal interlocutory orders deemed pivotal and debatable."); Walsh v. Ford Motor Co., 807 F.2d 1000, 1002 n.2 (D.C. Cir. 1986) (stating that the district court must make all three findings described in the statute).  "This screening procedure serves the dual purpose of ensuring that [interlocutory] review will be confined to appropriate cases and avoiding time-consuming jurisdictional determinations in the court of appeals." Coopers & Lybrand v. Livesay, 437 U.S. at 461.

### A.  Controlling Question of Law

The first requirement of Section 1292(b) is that the order contain "a controlling question of law."  "A 'question of law is an abstract legal issue or what might be called one of 'pure' law, matters the court of appeals can decide quickly and cleanly without having to study the record.'" Arias v. DynCorp, 856 F. Supp. 2d 46, 53-54 (D.D.C. 2012) (quoting Elkins v. District of Columbia, 685 F. Supp. 2d 1, 8 n.2 (D.D.C. 2010)).  Where "the crux of an issue decided by the Court is fact-dependent," however, certification is inappropriate as this "could only result in the court of appeals improperly wading into the factual pond of an ongoing matter." Keystone Tobacco Co. v. U.S. Tobacco Co., 217 F.R.D. 235, 238-39 (D.D.C. 2003).

The requirement that an issue be "controlling" means that a ruling on that issue "would require reversal if decided incorrectly or [] could materially affect the course of litigation with resulting savings of the court's or the parties' resources." Molock v. Whole Foods Mkt. Grp., 317 F. Supp. 3d at 4 (quoting Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp., 233 F.

Supp. 2d 16, 19 (D.D.C. 2002)).  "[T]he resolution of an issue need not necessarily terminate an action in order to be controlling, but instead may involve a procedural determination that may significantly impact the action."  Air Transp. Ass'n v. U.S. Dep't of Agric., 317 F. Supp. 3d 385, 394 (D.D.C. 2018) (quoting APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F. Supp. 2d at 96).  "The impact that the appeal will have on other cases is also a factor supporting a conclusion that the question is controlling."  APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F. Supp. 2d at 96.

## B.  Substantial Ground for Difference of Opinion

The second requirement of Section 1292(b), "substantial ground for difference of opinion," is "often established by a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits," and "also exists where a court's challenged decision conflicts with the decisions of several other courts."  APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F. Supp. 2d at 97-98; see also Gov't of Guam v. United States, No. 17-cv-2487, 2019 WL 1003606, at *5 (D.D.C. Feb. 28, 2019) (finding substantial ground for difference of opinion where "there is no controlling precedent from the D.C. Circuit" and "the other courts of appeals that have analyzed this issue are split").  "A mere claim that the district court's ruling was incorrect does not demonstrate a substantial ground for difference of opinion."  Singh v. George Washington Univ., 383 F. Supp. 2d 99, 104 (D.D.C. 2005) (quotation marks omitted).

"[N]either unusual facts nor legal issues of first impression" nor "the mere lack of authority on a disputed issue . . . necessarily establish [a] substantial ground for difference of opinion under the statute."  First Am. Corp. v. Al-Nahyan, 948 F. Supp. 1107, 1117 (D.D.C. 1996) (citations and quotation marks omitted); see also Wash. Tennis & Educ. Found., Inc. v. Clark Nexsen, Inc., 324 F. Supp. 3d 128, 145 (D.D.C. 2018) ("[W]hile the issue . . . is one

of first impression in this Circuit, that fact alone does not 'require, or in this instance, justify, certification of an interlocutory appeal.'" (quoting Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp., 233 F. Supp. 2d at 20)); Keystone Tobacco Co. v. U.S. Tobacco Co., 217 F.R.D. at 239 ("The fact that this Circuit has not yet articulated a standard . . . does not convince the Court [that there is a substantial ground for a difference of opinion].").

At the same time, "a complete absence of any precedent from any jurisdiction" does not foreclose interlocutory review.   Nat'l Veterans Legal Servs. Program v. United States, 321 F. Supp. 3d 150, 155 (D.D.C. 2018).  The Court may still conclude that "the issue is truly one on which there is a substantial ground for dispute" if "the arguments in favor of each parties' position . . . are not without merit."  Id.  In such a case, the Court's focus is on "the strength of the arguments in opposition to the challenged ruling."  APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F. Supp. 2d at 98 (citing In Re Vitamins Antitrust Litig., Misc. No. 99-197, MDL No. 1285, 2000 WL 33142129, at *1 (D.D.C. Nov. 22, 2000)); see also Kennedy v. District of Columbia, 145 F. Supp. 3d 46, 52 (D.D.C. 2015) (finding substantial ground for difference of opinion on an issue of first impression in this Circuit, where plaintiff identified a district court decision in another Circuit and agency guidance suggesting bases for disagreement).

### C.  Materially Advance the Ultimate Termination of the Litigation

To satisfy the third requirement of Section 1292(b), that "immediate appeal from the order may materially advance the ultimate termination of the litigation," the moving party must show that "reversal would hasten or at least simplify the litigation in some material way, such as by significantly narrowing the issues, conserving judicial resources, or saving the parties from needless expense."  Molock v. Whole Foods Mkt. Grp., 317 F. Supp. 3d at 6.  Although the

movant need not show that reversal would <u>end</u> the litigation, it must identify an impact on the proceeding that is more than merely speculative.  <u>See</u> <u>Molock v. Whole Foods Mkt. Grp.</u>, 317 F. Supp. 3d at 6; <u>cf.</u> <u>Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.</u>, 217 F.R.D. at 239 ("A possible impact on case strategy . . . is too intangible a repercussion on the progress of a case to justify certification of interlocutory appeal.").

### D.   Certification Appropriate as a Discretionary Matter

Even where the district court "confirm[s] that the moving party has satisfied all of the elements of section 1292(b) . . . it must also conclude that certification is appropriate as a discretionary matter." <u>Azima v. RAK Inv. Auth.</u>, 325 F. Supp. 3d 30, 35 (D.D.C. 2018).  The party seeking certification must overcome the "strong congressional policy against piecemeal reviews" by showing that "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment."  <u>Citizens for Resp. & Ethics in Washington v. Am. Action Network</u>, 415 F. Supp. 3d 143, 144-45 (D.D.C. 2019) (quoting <u>Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.</u>, 233 F. Supp. 2d at 20; <u>Coopers & Lybrand v. Livesay</u>, 437 U.S. at 475); <u>see</u> <u>also</u> <u>Tolson v. United States</u>, 732 F.2d 998, 1002 (D.C. Cir. 1984) ("Section 1292(b) 'is meant to be applied in relatively few situations and should not be read as a significant incursion on the traditional federal policy against piecemeal appeals.'" (quoting 10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2658.2, at 80 (2d ed. 1983))).

### E.   Court of Appeals Review

Once a district court certifies a nonfinal order for interlocutory review, "[a] court of appeals may then, in its discretion, determine whether the order warrants prompt review." <u>Van Cauwenberghe v. Biard</u>, 486 U.S. at 530; <u>see</u> <u>also</u> <u>Walsh v. Ford Motor Co.</u>, 807 F.2d

at 1002 n.2 ("The decision whether to grant an interlocutory appeal from an *order* of a district court under § 1292(b) is within the discretion of the court of appeals.").  "[T]he appellate court may address any issue fairly included within the certified order because it is the *order* that is appealable, and not the controlling question identified by the district court."  Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 205 (1996) (quotation marks omitted).

## III.  DISCUSSION

Defendants argue that immediate appeal is warranted because the Court's order contains two legal conclusions that will control the admissibility of evidence in these cases: (1) that the phrase "an interline movement" is restricted to discussions or agreements about "identifiable . . . movements with identifiable circumstances"; and (2) that Section 10706 may be implemented through redactions and limiting instructions.  Def. Mot. at 1-2.  In defendants' view, these rulings will "radically affect the record available on summary judgment [and a]t trial" in almost one hundred cases, because they will "allow the admission into evidence – at least in some form – of a vast quantity of the interline evidence from which Plaintiffs want the jury to infer an unlawful conspiracy."  Id. at 3.  Defendants characterize the Court's conclusions as "in tension with the statute's text, structure, purpose, and history," and "not the approach Congress envisioned."  Id. at 2-3.  In their view, immediate appeal will materially advance the termination of these cases by providing certainty on these issues and avoiding the risk of numerous "post-trial appeals . . . and the need for retrials."  Def Mot. at 4.

Plaintiffs respond that defendants have failed to establish the three statutory requirements of Section 1292(b) and that any guidance resulting from an immediate appeal "would have minimal value and would not affect the admissibility of most of the evidence," which they say relates to all rates, not just interline rates.  Pl. Opp. at 2, 11.  Plaintiffs contend

11

that because evidence concerning all rates, in their view, already "precludes summary judgment in Defendants' favor," immediate appeal related to the evidence affected by Section 10706 would not alter the outcome at summary judgment or at trial.  Id. at 3.  Plaintiffs also argue that defendants have failed to establish exceptional circumstances that would warrant interlocutory appeal as a discretionary matter.  Pl. Opp. at 2.  They contend that interlocutory appeal would result in "further delay of a year or more," which would in turn "harm the interests of justice, and unduly prolong this already elongated litigation."  Pl. Opp. at 1.  Plaintiffs urge that the "proper course for these cases" is "to reach final judgment," at which point "the Section 10706 issue . . . can be definitively resolved on appeal."  Id. at 2.

### A.  The Order Concerns Controlling Questions of Law
#### 1.  Defendants Have Identified Two Questions of Law

The Court agrees that the two conclusions identified by defendants involve questions of law.  One of these conclusions concerns the "proper interpretation" of a federal statute, which is "a pure legal issue."  Nat'l Veterans Legal Servs. Program v. United States, 321 F. Supp. 3d at 154; see also Def. Mot. at 9.  The interpretation of a statutory term – here, "interline movement" – is the quintessential "abstract legal issue" that "the court of appeals can decide quickly and cleanly without having to study the record."  Arias v. DynCorp, 856 F. Supp. 2d at 53-54.  This is clear from the fact that the Court interpreted the phrase "interline movement" by considering legal authorities, including congressional reports, the Dictionary Act, and other portions of Section 10706, and hypothetical scenarios "in which rail carrier A requests cooperation from rail carrier B," without relying on the facts of this case.  Rail Freight V, 2021 WL 663669, at *18-19; see also Keystone Tobacco Co. v. U.S. Tobacco Co., 217 F.R.D. at 238; Def. Mot. at 9.

The other conclusion on which defendants seek immediate appellate review involves the application of standard evidentiary principles in the context of Section 10706. Defendants question whether the language and structure of that particular statute permit the Court to implement the statute's protections through these commonly accepted trial management practices. Again, this raises a question of law. In determining that it could implement Section 10706 through redactions and limiting instructions, the Court analyzed the statutory language, case law, and the Federal Rules of Evidence and did not "study the record." Arias v. DynCorp, 856 F. Supp. 2d at 53-54; see Rail Freight V, 2021 WL 663669, at *17, 23.

Plaintiffs' suggestion that these two legal issues "are inextricably intertwined with the facts" is simply not an accurate description of the Court's opinion. Pl. Opp. at 12. While it is true that the Court identified certain exhibits containing evidence that it found not protected by the statute, in whole or in part, it did so only after interpreting the statute. See Rail Freight V, 2021 WL 663669, at *18, *23. The Court referred to several specific exhibits in its analysis of the statute, but it did so primarily to illustrate different types of possible discussions between rail carriers, not in all instances to reach conclusions specific to those exhibits. See, e.g., id. at *18 (citing Def. Mot., Ex. 76 for the proposition that "[a] single document may be evidence of both external and internal discussions or agreements"). Far from being "inextricably intertwined," the Court's legal analysis can be cleanly separated from its consideration of specific items of evidence. Pl. Opp. at 12.

Plaintiffs' contention that evidentiary rulings are disfavored for interlocutory appeal is generally correct, but here that argument "collapses the time-honored distinction between a decision that establishes a legal standard and one that merely applies an accepted standard." Def. Reply at 7. The cases plaintiffs cite are distinguishable; they all involve the

application of evidentiary standards to specified facts.  See Educ. Assistance Found. for

Descendants of Hungarian Immigrants in the Performing Arts, Inc. v. United States, No.

CV 11-1573, 2014 WL 12780253, at *2 (D.D.C. Nov. 21, 2014) (declining to certify order on

motion to exclude privileged document); Hurt v. Vantlin, No. 314-cv-00092, 2020 WL 1310443,

at *3 (S.D. Ind. Feb. 6, 2020) (declining to certify order on motion in limine); Ebert v. Twp. of

Hamilton, No. CV 15-7331, 2020 WL 948774, at *3 (D.N.J. Feb. 27, 2020) (same).  Where an

evidentiary order "involves a new legal question or is of special consequence," however, "district

courts should not hesitate to certify an interlocutory appeal."  Mohawk Indus., Inc. v.

Carpenter, 558 U.S. 100, 110 (2009).  Here, defendants are not seeking to appeal the Court's

rulings regarding specific documents.  They instead seek review of the Court's interpretation of a

statute that will govern future decisions concerning admissibility of evidence in this and nearly

one hundred other cases.  See Def. Mot. at 1-2.

        Furthermore, contrary to plaintiffs' argument, Pl. Opp. at 14, the possibility that

the D.C. Circuit may in its discretion address other issues "fairly included within the certified

order" does not render the order ineligible for interlocutory appeal, because there is no

requirement that every issue "fairly included within the certified order" meets the requirements

for interlocutory appeal, Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. at 205.  Rather, the

court of appeals may "deem it necessary to address on appeal" additional issues beyond the legal

issues that the district court certifies as "controlling."  Walsh v. Ford Motor Co., 807 F.2d

at 1001 n.2; see also id. ("[T]he appeal is from an order of the district court, not from the

particular question that the district court found controlling. . . .  [W]e must decide all questions of

law necessary to the proper disposition of this appeal."); Donohue v. Milan, 942 F.3d 609, 615

(2d Cir. 2019) (the court of appeals may "consider a question different than the one certified as controlling").

## 2.   The Questions are Controlling

The two issues identified in the defendants' motions are controlling because the Court's ruling on these points plainly "would require reversal if decided incorrectly."  In Re Vitamins Antitrust Litig., 2000 WL 33142129, at *1; see Nat'l Veterans Legal Servs. Program v. United States, 321 F. Supp. 3d at 153-54 (a ruling on "the proper interpretation" of a statute "would require reversal" if incorrect).  If the meaning of "interline movement" in Section 10706 is not limited to "an identifiable movement or movements with identifiable circumstances," the Court's holding to the contrary could not stand.  Rail Freight V, 2021 WL 663669, at *19. Similarly, if the protections contemplated by Section 10706 may not be implemented through limiting instructions and redactions, they would likely need to be implemented through wholesale exclusion of certain items of evidence, in direct contravention of this Court's ruling. See id. at *17, *23.  As defendants explain, these two conclusions "establish[] the legal rules to apply in determining the admissibility of much of the key documentary evidence."  Def. Mot. at 8.

While reversal on appeal would not "dictat[e] the outcome of these cases," Pl. Opp. at 18, that is not the standard under Section 1292(b).  "The resolution of an issue need not necessarily terminate an action in order to be 'controlling,' but instead may involve a procedural determination that may significantly impact the action."  APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F. Supp. 2d at 96 (citations omitted).  Here, the case would continue whether the D.C. Circuit affirms or reverses this Court's order, "but the nature of what would follow," particularly

the nature of the evidentiary determinations to be made, "would differ significantly." Nat'l Veterans Legal Servs. Program v. United States, 321 F. Supp. 3d at 154.

As defendants correctly explain, the two conclusions they identify "radically affect the record available on summary judgment" and "[a]t trial." Def. Mot. at 3. If the court of appeals disagrees with this Court about the definition of "interline movement," evidence of conversations that do not refer to "particular shipments" or "specific routes and shippers" might be protected by Section 10706, which would reduce the number and types of communications plaintiffs can use to establish the alleged conspiracy. See Rail Freight V, 2021 WL 663669, at *19; Def. Mot. at 10. Similarly, if the D.C. Circuit holds that Section 10706 may not be implemented through redactions and limiting instructions, any item of evidence that even falls partially within the scope of Section 10706 would have to be excluded in its entirety.

Immediate appellate review of these two aspects of the Court's Section 10706 ruling is rendered all the more consequential by the fact that it will have an impact on "[n]early one hundred similar cases, with more than three hundred plaintiff entities," consolidated in Rail Freight MDL No. 1869 before the undersigned and in MDL No. 2952 before Chief Judge Howell. Def Mot. at 16; see APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F. Supp. 2d at 96 ("The impact that the appeal will have on other cases is also a factor supporting a conclusion that the question is controlling."). The interpretation of Section 10706 will define the contents of the record for all these cases at the summary judgment stage, as well as at trial in those cases that proceed to trial, and it could result in "vastly different possible outcomes." Nat'l Veterans Legal Servs. Program v. United States, 321 F. Supp. 3d at 154; see Def. Mot. at 10-16. The Court therefore concludes that the first requirement of Section 1292(b) is satisfied.

*B.  There is Substantial Ground for Difference of Opinion*

Defendants contend that reasonable jurists could disagree regarding the correct interpretation of "interline movement" and the manner in which Section 10706 may be implemented because the Court's opinion addressed "an entire statute of first impression," and interpreted aspects of the statute "in ways that no party had advocated."  Def. Mot. at 16-17. Plaintiffs respond that the absence of any conflicting judicial decision interpreting Section 10706 "is reason enough to deny certification," and that the fact that "no party quite advocated for the precise outcome reached by the Court" does not satisfy this prong because the "[p]arties are advocates, not jurists."  Pl. Opp. at 19.

It is true that the party seeking interlocutory review "often" establishes a difference of opinion through "a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits," and that there are no conflicting decisions in this case. APCC Servs. v. Sprint Commc'ns Co., 297 F. Supp. 2d at 97; see Pl. Opp. at 19.  Until this Court's opinion, "no court ha[d] interpreted the provisions of Section 10706(a)(3)(B)(ii).  Rail Freight V, 2021 WL 663669, at *7; see Pl. Opp. at 19-20.  Yet even where "there is a complete absence of any precedent from any jurisdiction," the Court may still conclude that "the issue is truly one on which there is a substantial ground for dispute" if "the arguments in favor of each parties' position . . . are not without merit."  Nat'l Veterans Legal Servs. Program v. United States, 321 F. Supp. 3d at 155 (quotation marks omitted).

While the Court is confident in its rulings, it acknowledges that "the arguments in support of contrary conclusions are not insubstantial."  APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F. Supp. 2d at 98.  The Court concluded that the statutory phrase "an interline movement" refers to movements that are "identifiable" and pertain to "a specific shipper, specific shipments, and specific destinations."  Rail Freight V, 2021 WL 663669, at *19.  Yet as

17

defendants explain, a reasonable jurist could plausibly conclude that the textual reference to a "discussion or agreement . . . [that] concerned an interline movement of the rail carrier" encompasses business discussions about shared interline traffic.  49 U.S.C. § 10706(a)(3)(B)(ii)(II); see Def. Mot. at 19.  The policy objective of the statute – to enable rail carriers to communicate about shared interline traffic without exposing themselves to antitrust liability – arguably provides support for this view.  See Def. Mot. at 20.  Defendants reason that this goal "depends on railroads acting like any other joint venture" including by "collaborat[ing] on seeking new interline business, deciding how to address changing input costs, and setting up general interline rates and policies," without distinguishing between identifiable interline movements and general communications about interline traffic.  Id.  This Court does not believe this is the best interpretation of the statute, but it also does not find it wholly unreasonable.

The Court is more skeptical of defendants' argument that Section 10706 must be applied through wholesale admission or exclusion of items of evidence.  Still, another reasonable jurist might find defendants' proposed interpretation persuasive.  In the Court's view, redactions and limiting instructions are well recognized trial management techniques that may be employed generally, whether a statute expressly endorses their use or not.  Section 10706, however, is an unusual statute that provides an explicit congressional instruction concerning the admissibility of certain types of evidence in antitrust cases targeting rail carriers.  The statute does not mention redactions or limiting instructions, and it could plausibly be read to refer to admission or exclusion of items of evidence in their entirety:  "the court shall determine whether the requirements of subclause (I) or (II) are satisfied before allowing the introduction of any such evidence."  49 U.S.C. § 10706(a)(3)(B)(ii).  In this context, because the statute at issue bears

directly on the admissibility of certain types of evidence, defendants' argument is "not [entirely] without merit."  Nat'l Veterans Legal Servs. Program v. United States, 321 F. Supp. 3d at 155.[3]

Plaintiffs explain in depth why they believe defendants' proposed interpretation is not reasonable.  See Pl. Opp. at 22-29.  The Court also does not believe defendants have proposed the best interpretation of the statute; it "has not faltered in its abiding belief in its own interpretation" of Section 10706.  Gov't of Guam v. United States, 2019 WL 1003606, at *5.  The Court acknowledges, however, that another reasonable jurist might disagree, at least in certain respects.  The Court therefore concludes that there is "substantial ground for difference of opinion," notwithstanding the dearth of contrary precedent.  28 U.S.C. § 1292(b).

C.  *Immediate Appeal May Materially Advance the Ultimate Termination of the Litigation*

According to defendants, immediate appeal "will go far toward an efficient termination of this litigation" for three reasons:  (1) it will provide certainty regarding the protections of Section 10706, which bear on issues at summary judgment and at trial in Rail Freight MDL No. 1869, in Oxbow, and in MDL No. 2952; (2) it is unlikely to delay immediately pending proceedings, namely, ongoing expert discovery in Rail Freight and discovery in MDL No. 2952; and (3) delaying appeal until after final judgment could lead to numerous and unnecessarily wasteful post-trial appeals on these same issues.  Def. Mot. at 25-27.  Plaintiffs respond that reversal by the court of appeals would not have a sufficiently material impact on these cases to justify immediate appeal, because reversal "would mean only some greater or

---

[3]    Defendants' citation to Jung v. Association of American Medical Colleges, 339 F. Supp. 2d 26 (D.D.C. 2004) is unhelpful.  While that case concerns a statute, 15 U.S.C. § 37b, which makes evidence of certain conduct inadmissible in an action alleging antitrust violations, the Court's decision in that case did not address the manner in which that statute should be implemented and "tells us nothing about whether redactions and limiting instructions are suitable methods to implement Section 10706 (or any other evidentiary statute)."  Pl. Opp. at 27.

lesser amount of evidence might be excluded in some fashion," and would "not terminate the cases." Pl. Opp. at 29-30. Plaintiffs suggest that there would still be a need for further appellate review on other issues addressed in the Court's Section 10706 opinion. Pl. Opp. at 1, 31. Finally, plaintiffs assert that an interlocutory appeal would cause delay of "at least a year, and perhaps much longer . . . beyond the time period in 2022 when a trial could otherwise occur." Id. at 31-32.

As an initial matter, the fact that "there still would be a trial regardless of whether the challenged evidence is admissible," Pl. Opp. at 30, does not make this case unsuitable for interlocutory appeal. See Molock v. Whole Foods Mkt. Grp., 317 F. Supp. 3d at 7 ("[A] movant need not show that a reversal on appeal would actually end the litigation."). The cases plaintiffs cite denying interlocutory appeal where "trial . . . would still have to occur," Pl. Opp. at 30, involved case-specific determinations bound up with factual issues to be resolved at trial. See Educ. Assistance Found. for Descendants of Hungarian Immigrants in the Performing Arts, Inc. v. United States, 2014 WL 12780253, at *2 (seeking interlocutory appeal of order denying motion to preclude use of a privileged document); U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., 576 F. Supp. 2d 128, 130 (D.D.C. 2008) (seeking interlocutory appeal of summary judgment order). Here, the questions defendants seek to appeal are questions of law, and appellate resolution of these questions now has "the potential of avoiding burdensome [] costs and conserving judicial resources in the event of a reversal." Molock v. Whole Foods Mkt. Grp., 317 F. Supp. 3d at 7.

The extent to which immediate appeal may "hasten or at least simplify the litigation in some material way" must be analyzed within the broader context of these cases. Molock v. Whole Foods Mkt. Grp., 317 F. Supp. 3d at 6. The Rail Freight multidistrict litigation

20

before the undersigned has been underway since 2007, and plaintiffs in that case sought to certify a class of over 16,000 shippers who they claimed were affected by defendants' alleged price-fixing conspiracy.  See Rail Freight V, 2021 WL 663669, at *2 n.3; In re Rail Freight Fuel Surcharge Antitrust Litig. – MDL No. 1869, 934 F.3d at 620.  Following the D.C. Circuit's affirmance of this Court's denial of class certification, five individual cases remain for trial.  See Def. Mot. at 4, 16, 26.  Oxbow began in 2011 and involves price-fixing allegations by five individual plaintiffs that are "virtually identical" to those in Rail Freight, brought against two of the same rail companies that are defendants in Rail Freight.  Oxbow II, 81 F. Supp. 3d at 5, n.3.  MDL No. 2952 involves approximately ninety-three complaints filed by over 300 plaintiffs that "generally repeat the claims made by the putative class members" in Rail Freight.  Rail Freight V, 2021 WL 663669, at *3; In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II), Misc. No. 20-0008, MDL No. 2952, 2021 WL 1909777, at *1 (D.D.C. May 12, 2021).

The interpretation and application of Section 10706 is a central question in all the individual cases now pending before the undersigned and before Chief Judge Howell.  Plaintiffs' ability to establish a conspiracy, and defendants' ability to defend themselves against allegations of conspiratorial conduct, turn in no small measure on what evidence is admissible, and in what form, pursuant to Section 10706.  See In re Rail Freight Fuel Surcharge Antitrust Litig. – MDL No. 1869, 725 F.3d at 247 n.1 (noting that invocation of Section 10706 "is part of the defendants' overall litigation strategy").  This in turn will affect this Court's decision and Chief Judge Howell's decision concerning summary judgment, and potentially the outcome at trial in up to nearly one hundred cases.

The parties in Rail Freight MDL No. 1869 and in Oxbow are scheduled to conclude briefing on summary judgment as to liability on August 12, 2021, with oral argument

to follow promptly thereafter.  March 30, 2021 Memorandum Opinion and Order [Dkt.

No. 1016] at 4.  Expert discovery in Rail Freight MDL No. 1869 is proceeding simultaneously

on a separate track before Magistrate Judge Harvey and is scheduled to close on

August 20, 2021.  Id. at 3; December 18, 2020 Order [Dkt. No. 1002] at 1.  The parties in MDL

No. 2952, meanwhile, are in the midst of fact discovery, which is scheduled to conclude on

October 1, 2021.  Following the conclusion of fact discovery, they will begin expert discovery,

which is scheduled to extend through May of 2022.  Order at 1-2, In re Rail Freight Fuel

Surcharge Antitrust Litig. (No. II), Misc. No. 20-0008, MDL No. 2952 (D.D.C. May 22, 2020)

[Dkt. No. 102].

        While these schedules may change, they indicate that the parties in MDL

No. 2952 may be in the position to brief summary judgment in the summer of 2022, possibly

around the same time that Rail Freight MDL No. 1869 is nearing trial.  In other words, were the

Court to deny interlocutory appeal as plaintiffs request, Rail Freight MDL No. 1869 could

proceed through summary judgment and trial, and MDL No. 2952 could proceed through

summary judgment, all before the court of appeals has the opportunity to interpret

Section 10706.  If the D.C. Circuit interprets Section 10706 only after a trial in Rail Freight

MDL No. 1869, these key merits determinations would be made on the basis of this Court's

interpretation of Section 10706.  Depending on whether and to what extent the D.C. Circuit

disagrees with this Court regarding Section 10706, these cases could be remanded for new

proceedings in potentially one hundred cases, consistent with the appellate court's interpretation.

See In re Gen. Motors LLC Ignition Switch Litig., 427 F. Supp. 3d 374, 393 (S.D.N.Y. 2019)

("The third factor is [] satisfied . . . . [I]mmediate appeal serves the interests of judicial economy,

because reversal after trial might well require a new trial[.]").  Plaintiffs' suggestion that

appellate review of the Court's interpretation of Section 10706 should follow a trial in Rail

Freight MDL No. 1869 ignores this risk of duplicative proceedings.

        Certifying these questions for immediate appeal, on the other hand, has the

potential to streamline the proceedings.  Contrary to plaintiffs' suggestion that immediate appeal

"would provide little or no benefit to the MDL [No. 1869] cases and would provide even less

benefit to the MDL [No. 2952] cases," Pl. Opp. at 32, it may "conserve[e] judicial resources[

and] sav[e] the parties from needless expense," APCC Servs., Inc. v. Sprint Commc'ns Co., 297

F. Supp. 2d at 100.  At one point or another, the D.C. Circuit will need to weigh in on the

interpretation of Section 10706.  In the Court's view, the best time for it to do so is now, before

any of the cases proceed to trial, and before a summary judgment ruling has been handed down.

"[B]efore proceeding to a potentially lengthy and complicated [pretrial] phase based on an

interpretation of the statute that could be later reversed on appeal, it is more efficient to allow the

[D.C.] Circuit an opportunity first to determine what the statute means."  Nat'l Veterans Legal

Servs. Program v. United States, 321 F. Supp. 3d at 155.

        The fact that the correct interpretation of Section 10706 implicates issues beyond

those raised in the defendants' motions does not mean duplicate appeals would be necessary, as

plaintiffs suggest.  See Pl. Opp. at 1-2.  Appellate jurisdiction pursuant to Section 1292(b)

"applies to the *order* certified to the court of appeals[] and is not tied to the particular question

formulated by the district court."  Yamaha Motor Corp. v. Calhoun, 516 U.S. at 205.  Thus "the

appellate court may address any issue fairly included within the certified order because 'it is the

*order* that is appealable, and not the controlling question identified by the district court.'"

United States v. Philip Morris USA, Inc., 396 F.3d 1190, 1194 (D.C. Cir. 2005) (quoting

Yamaha Motor Corp. v. Calhoun, 516 U.S. at 205).  The D.C. Circuit may consider and resolve

on interlocutory appeal other issues within the scope of this Court's Section 10706 order.  See

Walsh v. Ford Motor Co., 807 F.2d at 1001 n.2; Government of Guam v. United States, 2019

WL 1003606, at *7; Def. Reply at 2 n.1.

   Plaintiffs are correct, of course, that the fact that this case and the cases before

Chief Judge Howell are multidistrict cases does not, standing alone, justify interlocutory review.

Pl. Opp. at 32 (citing In re Facebook, Inc., IPO Sec. & Derivative Litig., 986 F.

Supp. 2d 524, 534 (S.D.N.Y. 2014); In re Refrigerant Compressors Antitrust Litig.,

No. 2:09-md-02042, 2013 WL 4009023, at *5 (E.D. Mich. Aug. 5, 2013)).  Yet the fact that the

interpretation of Section 10706 will affect so many cases amplifies the importance of obtaining

clarity from the court of appeals.  See APCC Servs., Inc. v. Sprint Commc'ns Co., 297 F.

Supp. 2d at 100 ("Resolution of this question would also assist many other courts in resolving

similar disputes."); In re Gen. Motors LLC Ignition Switch Litig., 427 F. Supp. 3d at 393

("[B]ecause the Court's summary judgment ruling arises in the context of an MDL, the

efficiencies to be gained by interlocutory appeal are particularly substantial.").  The Court

therefore concludes that an immediate appeal may "materially advance the ultimate termination

of the litigation."

### D.  Immediate Appeal is Appropriate as a Discretionary Matter

   For many of the same reasons previously discussed, the Court concludes that

interlocutory appeal is appropriate as a discretionary matter because defendants have

demonstrated that "exceptional circumstances justify a departure from the basic policy of

postponing appellate review until after the entry of final judgment."  Citizens for Resp. & Ethics

in Washington v. Am. Action Network, 415 F. Supp. 3d at 144-45 (quoting Coopers & Lybrand

v. Livesay, 437 U.S. at 475).  Plaintiffs' suggestion that these claims are not ripe for appellate

review "because the [factual] record is not sufficiently developed," Pl. Opp. at 36, is incorrect

and at odds with the requirement in Section 1292(b) that an order concern "questions of law."

There is also little risk here of rendering "advisory opinions," because the importance of

Section 10706 to the present dispute will not "evaporate in the light of full factual development."

See Pl. Opp. at 36 (quoting Paschall v. Kansas City Star Co., 605 F.2d 403, 406 (8th Cir. 1979);

see also id. (citing Oneida Indian Nation of New York State v. Oneida County, 622

F.2d 624, 628 (2d Cir. 1980) (finding interlocutory appeal inappropriate where the issue to be

certified "could be mooted" and "the premise of the certified question may be destroyed")).

## IV. CONCLUSION

For the foregoing reasons, the Court will grant the Rail Freight Defendants'

Motion for Certification Pursuant to 28 U.S.C. § 1292(b) and Supporting Statement of Points and

Authorities [Dkt. No. 1010] and the Oxbow Defendants' Motion for Certification Pursuant to 28

U.S.C. § 1292(b) and Supporting Statement of Points and Authorities, Oxbow Carbon &

Minerals LLC v. Union Pac. R.R. Co., Civil Action No. 11-1049 [Dkt. No. 220].  An order

consistent with this opinion will issue this same day.

SO ORDERED.

/s/

_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  June 15, 2021