UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| In re RAIL FREIGHT FUEL SURCHARGE ANTITRUST LITIGATION<br><br>This document relates to:<br><br>ALL DIRECT PURCHASER CASES<br><br>OXBOW CARBON & MINERALS LLC, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNION PACIFIC RAILROAD CO., et al.,<br><br>    Defendants. | MDL Docket No. 1869<br>Miscellaneous No. 07-0489 (PLF)<br><br><br><br>Civil Action No. 11-1049 (PLF) |

MEMORANDUM OPINION AND ORDER

On June 24, 2022, the court of appeals issued a formal mandate, pursuant to Rule 41 of the Federal Rules of Appellate Procedure, returning jurisdiction of the cases consolidated for interlocutory appeal to this Court.  See Mandate, In re Rail Freight Fuel Surcharge Antitrust Litig. – MDL No. 1869, No. 21-7093, No. 21-7095 (D.C. Cir. June 24, 2022).  On June 29, 2022, the Court ordered the parties in In re Rail Freight Fuel Surcharge Antitrust Litigation, MDL No. 1869 ("MDL I"), Misc. No. 07-0489, and Oxbow Carbon & Minerals LLC v. Union Pacific Railroad Co. ("Oxbow"), Civ. No. 11-1049, to meet and confer and a submit joint status report informing the Court of any progress made to agree on procedures and set a schedule for supplemental briefing.  See Memorandum Opinion and Order,

MDL I [Dkt. No. 1084] at 2; see also Memorandum Opinion and Order, Oxbow [Dkt. No. 257] at 2.

On July 12, 2022, the parties in MDL I submitted a joint status report, stipulation, and proposed order in which they proposed a schedule for supplemental briefing and oral argument on the pending summary judgment motions and Section 10706 issues in MDL I and Oxbow.  See Joint Status Report, MDL I ("JSR 1") [Dkt. No. 1085]; see also 49 U.S.C. § 10706(a)(3)(B)(ii)(II) ("Section 10706").  The Court subsequently ordered the parties to meet and confer and submit a supplemental joint status report providing the Court with information regarding the status of the related cases before Chief Judge Howell and the schedule she has set for deciding summary judgment and other related matters.  See Minute Order (July 13, 2022).  The parties in both MDL I and Oxbow submitted supplemental joint status reports with the requested information on July 19, 2022.  See Joint Status Report, MDL I ("JSR 2") [Dkt. No. 1087]; see also Joint Status Report, Oxbow [Dkt. No. 259].

The Court has carefully considered the joint status report and proposed order in MDL I, as well as the supplemental joint status reports in both MDL I and Oxbow.  See JSR 1; JSR 2.  The Court rejects the parties' proposal and stipulation for how to proceed and their proposed schedule for supplemental briefing.  The Court believes that now that the D.C. Circuit has made clear how to read and apply Section 10706 in this case and all pending and future antitrust actions involving rail carriers, the parties should be able to determine by mutual agreement – without any involvement of the Court – which documents relating to the pending summary judgment motions should be excluded, in whole or in part, under Section 10706.  See

<u>In re Rail Freight Fuel Surcharge Antitrust Litig. - MDL No. 1869</u> ("<u>In re Rail Freight</u>"), 34 F.4th 1 (D.C. Cir. 2022).[1]  Accordingly, it is hereby

   ORDERED that the parties are directed to identify documents relevant to the pending summary judgment motions; meet and confer and attempt to agree on which documents should be excluded, in whole or in part, under Section 10706; and file a joint status report, on or before September 23, 2022, informing the Court of the outcome of their discussions.

   SO ORDERED.

                /s/
                PAUL L. FRIEDMAN
                United States District Judge

DATE:  July 27, 2022

---

[1] The parties need only apply the clear road map set out by the D.C. Circuit to determine which documents at issue must be excluded, in whole or in part.  <u>See</u> <u>e.g.</u>, <u>In re Rail Freight</u>, 34 F.4th at *9-10 (explaining that "a discussion or agreement 'concern[s] an interline movement' only if Defendants meet their burden of showing that the movements at issue are the participating rail carriers' shared interline traffic.  A discussion or agreement need not identify a specific shipper, shipments, or destinations to qualify for exclusion; more general discussions or agreements may suffice"); <u>see</u> <u>also</u> <u>id</u>. at *11-12 ("[A] rail carrier's internal documents need not convey the substance of a discussion or agreement concerning interline movements to qualify for exclusion under the statute").